1

2

3

4

5

6

7

8

9

10

11

12

O

JS - 6

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

13  Darryl Brown,                    )  CV 05-6279 RSWL (JCx)
                                     )
14              Plaintiff,           )  **ORDER RE: Defendant Kate**
                                     )  **Macias' Motion for**
15       v.                          )  **Summary Judgment;**
                                     )  **Request for Leave to**
16                                   )  **Amend Defendant's Answer**
    C. Terhune, et al.,              )  **[182]**
17                                   )
                Defendants.          )
18  _____)

19

20      On August 23, 2011, Defendant Kate Macias' Motion

21  for Summary Judgment and Request for Leave to Amend

22  Defendant's Answer [182] came on for regular calendar

23  before this Court.  The Court having reviewed all

24  papers submitted pertaining to this Motion and having

25  considered all arguments presented to the Court, **NOW**

26  **FINDS AND RULES AS FOLLOWS:**

27  **I.   BACKGROUND**

28      This Action centers around a claim brought by

Plaintiff Darryl Brown ("Plaintiff") against six
employees of the California State Prison-Los Angeles
County ("CSP-LAC") pursuant to 42 U.S.C. § 1983 for the
alleged violation of Plaintiff's rights under the
Eighth Amendment to the United States Constitution.

Plaintiff is a California state inmate who was
incarcerated at CSP-LAC, specifically Lancaster State
Prison (the "Prison"), at the time of the events giving
rise to this Action.  Plaintiff claims to suffer from
vision impairment caused by his diabetes.  Plaintiff
alleges that in February 2004, he was injured when he
fell on metal stairs while incarcerated at the Prison
due to the alleged failure of prison officials and
medical personnel to follow a medical prescription to
place him in a lower tier/lower bunk, prevent him from
falling down stairs and sustaining physical injuries,
and provide him with adequate medical treatment after
the fall.

Specifically, Plaintiff alleges that on February 1,
2004, he spoke to a correctional officer, N. Jackson,
at Plaintiff's cell and told him he was suffering from
blurred vision, dizziness and low sugar.  Stephanie
Johnson, a Medical Technical Assistant ("M.T.A."), told
Plaintiff to report his problems at the infirmary when
he received his daily insulin shot.  Plaintiff, who
claims he was wearing his "vision impairment" vest that
day, avers that Defendant Kate Macias ("Defendant"), a
correctional officer with the California Department of

Corrections who was the control booth officer in
Plaintiff's yard at the time, instructed Plaintiff to
go to the infirmary for his insulin shot.  Plaintiff
then left his cell to go to the infirmary, unescorted
by prison personnel.

As he walked down a metal staircase, Plaintiff lost
his balance and fell.  Plaintiff was then taken to the
prison infirmary, where he was examined and then
assessed by Pryor, a registered nurse.  Plaintiff
stated he had severe pain in his shoulder and back, and
that his left hand was numb.  Soon after, Dr. Haniffa
Cassim ("Dr. Cassim"), the physician on call, called in
response to a page from Pryor.  Dr. Cassim instructed
Pryor to administer Motrin and schedule a follow up
examination for the next day.  Pryor discharged
Plaintiff to the custody of a correctional officer,
Weier, who brought Plaintiff to his housing unit.

Plaintiff again saw Dr. Cassim on March 15, 2004,
and Dr. Cassim examined Plaintiff at this time.  During
this examination Plaintiff complained he was suffering
from pain in his back, left shoulder and arm, and that
he was also suffering from poor vision.  Plaintiff
requested Dr. Cassim order x-rays or an MRI, but Dr.
Cassim advised him these were not necessary.  As such,
based on this examination, Dr. Cassim diagnosed
Plaintiff as a diabetic who had complaints of back
pain, but concluded that no further treatment related
to the fall was necessary.  On March 29, 2004, Dr.

Cassim examined Plaintiff a second time, and Plaintiff alleges that during this examination he complained he had pain from the fall and that he also renewed his request for x-rays.

On February 3, 2004, Plaintiff filed a prison grievance inmate "Form 602" appeal ("Form 602") regarding the alleged denial of medical treatment for his injuries related to his February 1, 2004 fall. On February 8, 2004, Plaintiff filed a second grievance requesting a single cell due to his disabilities and alleging that the Prison had violated the Americans with Disabilities Act ("ADA").  The two appeals were combined and partially granted at the first level of review on March 16, 2005.  Plaintiff was given a lower bunk and lower tier cell, but his request for further medical evaluation was denied, as was his request for a special diabetic diet.[1]

At the second level of review, Plaintiff's February 3, 2004[2] grievance was denied.  On December 17, 2004, Plaintiff's inmate appeals were reviewed at the third level of review, the Director's Level. Plaintiff again argued that he was in pain and suffering, and requested to receive x-rays, be provided with a diabetic diet, and that he be given a walking stick, a

---

[1] Plaintiff was also evaluated by an optometrist, and a decision was made to transfer him to a disability placement.

[2] In the second level of review, Plaintiff stated he was dissatisfied with the first level response in that he still had not receive x-rays of the injuries sustained during the fall.

1  low bunk/low tier assignment and single cell
2  privileges.  The review "determined that the staff had
3  acted appropriately on the Plaintiff's requests" and
4  that Plaintiff's administrative remedies with respect
5  to those appeals had been exhausted. [Decl. of Paul F.
6  Arentz ("Decl. Arentz"), Ex. C, p. 94-95.]

7      On December 15, 2006, Plaintiff filed the operative
8  Second Amended Complaint ("SAC") pursuant to 42 U.S.C.
9  § 1983, raising an Eighth Amendment Claim against six
10 employees of the Prison, seeking monetary, declaratory
11 and injunctive relief.
12 Specifically, Plaintiff filed suit against Defendants
13 Dr. Cassim, Pryor, Johnson, Macias, Jackson and Weier.
14 Plaintiff alleges that Defendants' conduct violated his
15 right to be free from cruel and unusual punishment
16 under the Eighth Amendment, and sued all Defendants in
17 their individual and official capacities.

18     On April 30, 2008, the Court denied Defendants'
19 Motion to Dismiss as to all claims with the exception
20 of Plaintiff's claim for monetary relief against
21 Defendants in their official capacities [61].  On
22 November 10, 2009, this Court granted Summary Judgment
23 on Plaintiff's Section 1983 claim as to all Defendants,[3]
24 with the exception of Defendant Macias [141].
25 Specifically, the Court found that triable issue of
26
27
28

[3] The Court also granted summary judgment in favor of all
Defendants on Plaintiff's claim that Defendants violated the
Americans with Disabilities Act.

fact remained regarding Defendant Macias' liability on
Plaintiff's Section 1983 claim.  As such, Plaintiff's
Section 1983 claim against Defendant Macias is the sole
remaining claim in this Action.

**II.  LEGAL STANDARDS**

   A.   <u>Summary Judgment</u>

   Summary judgment is appropriate when there is no
genuine issue of material fact and the moving party is
entitled to judgment as a matter of law. Fed. R. Civ.
P. 56(a).  A genuine issue is one in which the evidence
is such that a reasonable fact-finder could return a
verdict for the non-moving party. <u>Anderson v. Liberty
Lobby</u>, 477 U.S. 242, 248 (1986).

   A party seeking summary judgment always bears the
initial burden of establishing the absence of a genuine
issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477
U.S. 317, 322 (1986).  The moving party can satisfy
this burden by: (1) presenting evidence that negates an
essential element of the non-moving party's case or (2)
demonstrating that the non-moving party failed to
establish an essential element of the non-moving
party's case on which the non-moving party bears the
burden of proving at trial. <u>Id.</u> at 322-23.

   Once the moving party establishes the absence of
genuine issues of material fact, the burden shifts to
the non-moving party to set forth facts showing that a
genuine issue of disputed fact remains. <u>Celotex</u>, 477
U.S. at 322.  However, the non-moving party is required

by Federal Rules of Civil Procedure, Rule 56(e)[4] to go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial. Id. at 324.  Conclusory allegations unsupported by factual allegations are insufficient to create a triable issue of fact so as to preclude summary judgment. Hansen v. United States, 7 F.3d 137, 138 (9th Cir. 1993)(citing Marks v. Dep't of Justice, 578 F.2d 261, 263 (9th Cir. 1978)).  A non-moving party who has the burden of proof at trial must present enough evidence that a "fair-minded jury could return a verdict for the [opposing party] on the evidence presented." Anderson, 477 U.S. at 255.

     B.   <u>Leave to Amend</u>

Federal Rule of Civil Procedure 15(a) provides that once the time frame to amend a pleading as a matter of course has lapsed, a party may amend its pleading only by obtaining leave of the Court. Fed. R. Civ. P. 15(a). Leave shall be "freely given when justice so requires." Id. See Foman v. Davis, 371 U.S. 178, 182 (1962). Courts consider the following factors in determining whether to grant leave to amend: undue delay, bad faith or dilatory motive, futility of amendment, prejudice to the opposing party and/or repeated failure to cure deficiencies by previous amendments. Kaplan v. Rose, 49

---

[4] The Federal Rules of Civil Procedure were amended on December 01, 2010. Federal Rules of Civil Procedure, Rule 56(e) has now been codified as Federal Rules of Civil Procedure, Rule 56(c).

F.3d 1363, 1370 (9th Cir. 1994); Moore v. Kayport Package Express, Inc., 885 F.2d 531, 538 (9th Cir. 1989).  "The party opposing the amendment has the burden of demonstrating why leave to amend should not be granted." Genentech, Inc. v. Abbott Labs., 127 F.R.D. 529, 530-31 (N.D. Cal. 1989) (citing Senza-Gel Corp. v. Seiffhart, 803 F.2d 661, 667 (Fed. Cir. 1986)).

C.   The Prison Litigation Reform Act

"The Prison Litigation Reform Act requires that a prisoner exhaust available administrative remedies before bringing a federal action concerning prison conditions." Harry v. Jordan, 605 F.3d 681, 683 (9th Cir. 2010) (quoting Griffin v. Arpaio, 557 F.3d 1117, 1119 (9th Cir. 2009) (citing 42 U.S.C. § 1997e(a))). The exhaustion requirement under the Prison Litigation Reform Act is mandatory, and requires "proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93 (2006). As such, a prisoner must "complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." Marella v. Terhune, 568 F.3d 1024, 1027 (9th Cir. 2009) (per curiam) (quoting Ngo, 548 U.S. at 88).  The defense of failure to exhaust is an affirmative defense as to which a defendant bears the burden of proof. Jones v. Bock, 549 U.S. 199, 216 (2007); Wyatt, 315 F.3d at 1119.

## III. DISCUSSION

A.   Plaintiff's Request for Judicial Notice

Pursuant to Federal Rule of Evidence 201, the Court may take judicial notice of adjudicative facts only. "A judicially noticed fact must be one not subject to reasonable dispute in that it is either 1) generally known within the territorial jurisdiction of the trial court or 2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).   A court must take judicial notice if a party requests it and supplies the court with the requisite information. Fed. R. Evid. 201(d).

The Court **GRANTS** Plaintiff's request for judicial notice, but takes judicial notice of only the authenticity and existence of the requested documents.[5]

_____

[5] Specifically, the Court takes judicial notice of the authenticity and existence of the following documents: 1) a copy of the Complaint filed by Plaintiff in this Action on August 26, 2005; 2) a copy of the First Amended Complaint, filed by Plaintiff in this Action on November 10, 2005; 3) a copy of the Second Amended Complaint, filed by Plaintiff in this Action on December 15, 2006, 4) a copy of Defendant's Motion to Dismiss the Second Amended Complaint, filed by Defendant on September 28, 2007; 5) a copy of Magistrate Judge Jacqueline Choolijian's Report and Recommendation denying Defendant's Motion to Dismiss, dated March 25, 2008, and the Court's Order adopting the Report and Recommendation on April 30, 2008; 6) a copy of Magistrate Judge Jacqueline Choolijian's Case Management and Scheduling Order pertaining to this Action, dated March 26, 2008; 7) Defendant's Answer to the Second Amended Complaint, filed by Defendant on May 16, 2008; 8) a copy of Magistrate Judge Jacqueline Choolijian's Report and Recommendation denying Defendant's Motion for Summary Judgment dated October 8, 2009 and the Court's Order adopting the Report and Recommendation on November 10, 2009; and 9) a copy of the Court's Order regarding

1   See <u>United States v. S. Cal. Edison Co.</u>, 300 F. Supp.

2   2d 964, 975 (E.D. Cal. 2004)(noting that a court can

3   only take judicial notice of the existence or

4   authenticity of a particular order, motion, pleading or

5   judicial proceeding, and not of the veracity or

6   validity of the document's contents).

7       B.  <u>Evidentiary Objections</u>

8       The Court **OVERRULES** Plaintiff's evidentiary

9   objections Nos. 1 and 3.  With respect to Plaintiff's

10  objection No. 2, the Court **SUSTAINS** Plaintiff's

11  objection to the statement in paragraph 8 of the

12  Declaration of Paul F. Arentz in which Paul F. Arentz

13  states that "[i]t was therefore obvious to both parties

14  from the outset that Plaintiff's inmate appeals, and

15  Plaintiff's exhaustion of administrative remedies under

16  the PLRA, were issues in this case," but **OVERRULES**

17  Plaintiff's objection to the remainder of the statement

18  at issue in this paragraph.

19      The Court **SUSTAINS** Defendant's evidentiary

20  objection Nos. 1 and 5 insofar as Defendant objects to

21  the excerpts of Plaintiff's deposition testimony

22  regarding the Prison's lockdown and escort procedures,

23  specifically Defendant's objection to p.54:1-19 and

24  p.24:8-13 of Exhibit H of the Declaration of Julie L.

25  Chen.  The Court **OVERRULES** Defendant's objections Nos.

26  _____

27  the Parties' joint stipulation for a final continuance of the
    Trial and related dates, setting the Trial date in this Action

28  for December 13, 2011.

1 and 5 insofar as Defendant objects to Plaintiff's Statements of Undisputed Facts Nos. 10, 11, 31, 32, 33, 36 and 55 and Plaintiff's Statement of Additional Material Facts No 12.  The Court **OVERRULES** Defendants objections Nos. 2, 3, 4, 6, 7, 8, 9, 10, 11, 12 and 13.

C.  Defendant's Motion For Leave To Amend

The Court **GRANTS** Defendant Leave to Amend her Answer to Plaintiff's SAC pursuant to Federal Rule of Civil Procedure 15 in order to assert the affirmative defense of failure to exhaust administrative remedies.

The Ninth Circuit has held that, absent prejudice to the plaintiff, an affirmative defense may be raised for the first time in a motion for summary judgment. See Panaro v. City of N. Las Vegas, 432 F.3d 949, 952 (9th Cir. 2005); Rivera v. Anaya, 726 F.2d 564 (9th Cir. 1984); Healy Tibbitts Constr. Co. v. Ins. Co. of N. America, 679 F.2d 803 (9th Cir. 1982); Medtronic, Inc. v. AGA Med. Corp., 2009 WL 1163976 (N.D. Cal., April 28, 2009).  As such, the Court finds that Defendant is not precluded from requesting leave to amend her Answer at this summary judgment stage.

The Court finds that Plaintiff has not met his burden to establish that leave to amend pursuant to Federal Rule of Civil Procedure 15(a)[6] should not be

_____

[6] While Plaintiff argues that Defendant is seeking to amend the March 26, 2008 Case Management and Scheduling Order, and therefore that Federal Rule of Civil Procedure 16(b) applies here and requires Defendant to make a showing of "good cause," the Court finds this argument unpersuasive and that Federal Rule of Civil Procedure 15(a) instead applies here.  Specifically, the

1  granted here.

2      First, the Court notes that while there is a

3  presence of delay here on part of Defendant in

4  requesting this leave to amend, delay alone is

5  insufficient to deny leave to amend. See Bowles v.

6  Reade, 198 F.3d 752, 758 (9th Cir. 1999)(noting that

7  "[u]ndue delay by itself ... is insufficient to justify

8  denying a motion to amend").  Instead, courts also

9  consider factors such as prejudice to the opposing

10  party, bad faith and futility of the amendment, with

11  prejudice being the most important factor. See id.;

12  Edwards v. City of Goldsboro, 178 F.3d 231, 242 (4th

13  Cir. 1999)(stating that "[t]he law is well settled that

14  leave to amend a pleading should be denied only when

15  the amendment would be prejudicial to the opposing

16  party, there has been bad faith on the part of the

17  moving party, or the amendment would be futile....

18  Delay alone is an insufficient reason to deny leave to

19  amend").  As such, the Court finds that the presence of

20

21  Court finds that the March 26, 2008 Order is not the controlling
   Scheduling Order in this Action, but instead that the July 22,
22  2010 Scheduling Order issued by the Court now controls this
   Action against Defendant, given it set forth new discovery and
23  motion filing cut-off dates, as well as a pre-trial and trial
   date.  As the July 22, 2010 Order did not contain a cut-off date
24  for the amendment of pleadings, the Court finds that Defendant is
   not requesting leave to amend this July 22, 2010 Order and
25  therefore Federal Rule of Civil Procedure 16 does not apply here.
   See Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 608 (9th
26  Cir. 1992)(noting that Rule 16 is applicable in a request for
   leave to amend only when the scheduling conference sets forth a
27  deadline to amend the pleadings and a party seeks leave to amend
   after this deadline).

28

1  delay in and of itself is insufficient to deny
2  Defendant leave to amend.

3      The Court finds that the relevant factors weigh in
4  favor of granting leave to amend here.  First, the
5  Court finds that Plaintiff has failed to establish the
6  presence of bad faith or dilatory motive on part of
7  Defendant in bringing this request for leave to amend.
8  Specifically, Defendant puts forth a Declaration of
9  Paul F. Arentz, the Deputy Attorney General for the
10 State of California assigned to represent Defendant, in
11 which he avers that he was unaware of the fact that
12 this affirmative defense had not been specifically pled
13 in the Answer and "promptly filed this Motion" upon
14 learning the defense had not been specifically pleaded.
15 [Decl. Arentz, ¶ 8.] See Owens v. Kaiser Found. Health
16 Plan Inc., 244 F.3d 708, 712 (9th Cir. 2001).
17 Plaintiff fails to proffer evidence of bad faith or
18 dilatory motive here on part of Defendant in requesting
19 this leave to amend, and therefore the Court finds that
20 these factors weigh in favor of granting leave to
21 amend.  Moreover, as discussed below, the Court finds
22 that leave to amend would not be futile here, as
23 Defendant has met her burden to establish that
24 Plaintiff failed to exhaust his administrative remedies
25 with respect to his claim against Defendant in this
26 present Case.

27     The Court also finds that Plaintiff has not met his
28 burden to establish that he will be substantially

prejudiced by granting Defendant leave to amend. "Prejudice is the touchstone of the inquiry under Rule 15(a)," and in order to justify denial of leave to amend, "the prejudice must be substantial." <u>Breakdown Servs., Ltd. v. Now Casting, Inc.</u>, 550 F. Supp. 2d 1123, 1132 (C.D. Cal. 2007).  First, the Court finds that Plaintiff has been on notice that Plaintiff's alleged failure to exhaust would be an issue in this Case, as Defendants had previously filed a Motion to Dismiss the SAC based in part on Plaintiff's alleged failure to fully exhaust his administrative remedies.[7] <u>See</u> <u>Sierra Club v. Union Oil Co. of California</u>, 813 F.2d 1480, 1493 (9th Cir. 1987)(noting that "where a defendant is on notice of the facts contained in an amendment to a complaint, there is no prejudice to defendant in allowing the amendment").  Moreover, the Court finds that Plaintiff has conducted discovery regarding the issue of exhaustion and the Prison's appeal process, as well as Plaintiff's specific prison appeal forms, and therefore will not be substantially prejudiced in granting Defendant leave to amend. Specifically, Plaintiff conducted discovery regarding the inmate appeal and grievances process, requesting specific documents on Plaintiff's appeal forms. [Decl.

---

[7] Specifically, Defendants argued in this Motion that Plaintiff had failed to exhaust his administrative remedies because he had only exhausted the first two of the four requisite administrative procedures.  The Court denied this Motion to Dismiss on the basis that Defendants had failed to put forth sufficient evidence of Plaintiff's alleged failure to exhaust.

Arentz, Ex. E.]   Moreover, Plaintiff has taken the deposition of John Curiel, the appeals coordinator, and asked him questions regarding the appeal and exhaustion process, specifically Plaintiff's own appeal. [Decl. Arentz, Ex. C.] See Edwards v. City of Goldsboro, 178 F.3d 231 (4th Cir. 1999)(finding defendant would not be prejudiced by allowing leave to amend the complaint, as the allegations sought to be added derived from evidence obtained during discovery); Duhn Oil Tool, Inc. v. Cooper Cameron Corp., 2010 WL 596312, at *11 (E.D. Cal. Feb. 16, 2010)(finding leave to amend would not prejudice to defendant given it was on notice of the potential new claim because both parties had conducted discovery relevant to the issue).

As such, the Court finds that Plaintiff has failed to show that he will be substantially prejudiced by granting leave to amend here, as the Court finds Plaintiff was on notice of this affirmative defense and was not prejudiced in his ability to develop evidence on this issue of exhaustion. See Morongo Band of Mission Indians v. Rose, 893 F.2d 1074 (9th Cir. 1990).

Therefore, the Court **GRANTS** Defendant leave to amend her Answer to the SAC in order to assert the affirmative defense of failure to exhaust administrative remedies.

D.   Defendant's Motion For Summary Judgment

Defendant moves for summary judgment on the basis that Plaintiff failed to properly exhaust his

15

1  administrative remedies as to his Section 1983 claim

2  against Defendant, as required under the Prison

3  Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a).

4      As a threshold matter, the Court finds that Ninth

5  Circuit case law establishes that a prisoner's failure

6  to exhaust administrative remedies is a matter of

7  abatement, and therefore the proper pretrial motion for

8  raising non-exhaustion is an unenumerated motion under

9  Federal Rule of Civil Procedure 12(b), not a summary

10 judgment motion. See Wyatt v. Terhune, 315 F.3d 1108,

11 1119-20 (9th Cir. 2003); Ritza v. Int'l Longshoremen's

12 & Warehousemen's Union, 837 F.2d 365, 368 (9th Cir.

13 1988) (per curiam).  As such, courts in this Circuit

14 have held that the defense of failure to exhaust

15 administrative remedies is to be raised in a motion to

16 dismiss pursuant to Federal Rule of Civil Procedure

17 12(b), or is to be treated as such if raised in a

18 motion for summary judgment. Williams v. Servin, 2011

19 WL 2837490, at *3 (C.D. Cal. May 20, 2011). See also

20 Morton v. Hall, 455 F. Supp. 2d 1066 (C.D. Cal. 2006).

21     Accordingly, as this Motion is predicated upon

22 Plaintiff's failure to exhaust his administrative

23 remedies, the Court treats this Motion as an

24 unenumerated Motion to Dismiss under Federal Rule of

25 Civil Procedure 12(b).[8] See Seneca v. Arizona, 345 Fed.

26 ─────────────────────

27     [8] The Court notes that in determining whether Defendant has
   met her burden to show failure of exhaustion, the Court can look
28 beyond the pleadings and decide disputed issues of fact. Wyatt,
   315 F.3d at 1119-20.  As such, the Court may consider the

16

Appx. 226, 229 (9th Cir. 2009).

The exhaustion requirement under the PLRA requires a prisoner to "properly" exhaust all available administrative remedies, meaning that "a grievant must use all steps the prison holds out, enabling the prison to reach the merits of the issue." Griffin v. Arpaio, 557 F.3d 1117, 1119 (9th Cir. 2009). "Prisoners need comply only with the prison's own grievance procedures to properly exhaust under the PLRA." Id. "The level of detail in an administrative grievance necessary to properly exhaust a claim is determined by the prison's applicable grievance procedures." Morton v. Hall, 599 F.3d 942, 944 (9th Cir. 2010). In California, the administrative appeals system is described in Title 15 of the California Code of Regulations.[9] California Code

_____

declarations and exhibits presented in determining whether Defendant has met her burden here. Chatman v. Felker, 2010 WL 3431806 (E.D. Cal. Aug 31, 2010). Moreover, the Court finds that this Motion is not time-barred under Federal Rule of Civil Procedure 12(b), as the timing requirement in Rule 12(b) only applies to the enumerated defenses listed in Rule 12(b). Fed. R. Civ. P. 12(b). As such, this timing requirement does not apply to the instant Motion for failure to exhaust. See Jensen v. Knowles, 621 F. Supp. 2d 921, 925-26 (E.D. Cal. 2008).

[9] The appeals process itself is a four-step process. First, an inmate must complete a Form 602 to initiate the grievance process. This appeal must be submitted within 15 days after the occurrence of the event or decision being appealed. Cal. Code Regs. tit. 15, § 3084.6(c). Then, an inmate must complete a four-step process to exhaust his or her administrative remedies. Brown v. Valoff, 422 F.3d 926, 929-30 (9th Cir. 2005). The inmate must proceed through the informal level, first formal level, second formal level, and then the third formal level, also known as the "Director's Level." Id. A prisoner ordinarily must exhaust his or her administrative appeals to the highest available level of review, the "Director's Level." See Barry v.

of Regulations, title 15, section 3084.2 requires an inmate to "describe the specific issue under appeal and the relief requested." Cal.Code Regs. tit. 15, § 3084.2(a).  Where a "prison's grievance procedures are silent or incomplete as to factual specificity," as is the case with California's procedures here, "a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought." Morton, 599 F.3d at 944. (quotation omitted). Moreover, "[a] grievance need not include legal terminology or legal theories unless they are in some way needed to provide notice of the harm being grieved. A grievance also need not contain every fact necessary to prove each element of an eventual legal claim." Grifin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009). Instead, "[t]he primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation." Id.

An inmate must completely exhaust these administrative remedies prior to filing any papers with a federal court to initiate the lawsuit. Vaden v. Summerhill, 449 F.3d 1047, 1051 (9th Cir. 2006).  The requirement of exhaustion applies to all claims alleged by the plaintiff. Lira v. Herrera, 427 F.3d 1164, 1170

Ratelle, 985 F. Supp. 1235, 1237-38 (S.D. Cal. 1997); Brown, 422 F.3d at 934, 937-38.  Defendant does not argue that Plaintiff failed to avail himself of this process, but instead argues that Plaintiff did not properly appeal his claim against Defendant here.

1 (9th Cir. 2005).  As such, no unexhausted claims

2 asserted in a complaint may be considered by the Court.

3     The Court finds that Defendant has met her burden

4 to establish that Plaintiff failed to properly exhaust

5 his administrative remedies with regard to his Section

6 1983 claim against Defendant.

7     On February 3, 2004, Plaintiff filed his first

8 inmate appeal Form 602.  In this first appeal form,

9 Plaintiff stated he was vision impaired and a diabetic,

10 that he was supposed to be housed on a lower bunk, and

11 that on February 1, 2004 "I inform the morning M.T.A.

12 that my eyes was hurting and I could not see proper. 30

13 minutes later they open my door for me to go take a

14 diabetic shot, as I was going down the stairs, I feel

15 down and as I tumbled my legs got caught in the

16 railing." [Decl. Arentz, Ex. C. at 85.]  He then stated

17 in this form he was still hurting from falling down the

18 stairs and was dissatisfied because he had not gotten

19 any medical treatment, specifically stating that "I

20 addressed this problem as an (emergency) and I clearly

21 ask for x-rays because I was hurting and all that I got

22 was wheelchaired back and carried back up stairs." [Id.

23 at 86.]  He also stated that a correctional officer,

24 Cole, had laughed at him when originally responding to

25 his fall, and then went on to request medical

26 treatment, a lower bunk and lower tier chrono, and

27 alleged that the M.T.A. was refusing to bring him his

28 insulin.  On February 8, 2004, Plaintiff filed his

second appeal form, requesting single cell privileges due to his illnesses and alleging that the Prison was violating the ADA. [Id. at 88.]   In this present Action, Defendant brings a Section 1983 claim against Defendant alleging that Defendant violated his Eighth Amendment rights by deliberately disregarding Plaintiff's disabilities and safety in opening his door and permitting him to walk to the infirmary unescorted during a lockdown, resulting in his fall and subsequent injury.

The Court finds these appeal forms were insufficient to put the Prison on notice of the nature of the wrongs for which Plaintiff seeks redress against Defendant in this Action. See Grifin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009).   Specifically, the Court finds that the two forms focus on Plaintiff's request for medical care and the allegation that he had not received his requested medical care, as well as his request for a different bunk and cell assignment based on his disabilities.[10]   Plaintiff's forms fail to mention sufficient facts or allegations regarding wrongdoing on part of a control booth officer or correctional officer here in the opening of Plaintiff's cell door or in the fact he was permitted to leave unescorted.   Instead, the February 3, 2004 appeal form

---

[10] Plaintiff himself acknowledges in his deposition that he filed his appeal "to get medical treatment." [Decl. Arentz, Ex. A at 28.]

simply states that the door was opened and only mentions a wrongdoing on part of the correctional officer Cole, who allegedly laughed at him after he fell, with the February 8, 2004 form focusing on Plantiff's request for a different cell and the Prison's alleged ADA violation.  As such, while Plaintiff's claim against Defendant in this Action asserts that she was deliberately indifferent to his rights and safety in opening his door, the Court finds that this alleged indifference is not sufficiently mentioned in the appeal forms here. See Griffin, 557 F.3d at 1120 (finding plaintiff had failed to exhaust administrative remedies because his appeal form did not provide enough information to allow prison officials to take appropriate responsive measures).

Moreover, Defendant offers the deposition testimony of John Curiel, in which Curiel states that in his review of the appeal, Plaintiff's appeal did not contend that any officer acted improperly, with the exception of Cole. [Decl. Arentz, Ex. C.] See Coley v. Cassim, 2008 WL 2073949, at *5 (E.D. Cal. May 14, 2008)(pointing to the fact that the prison officials "clearly understood what plaintiff was complaining about and what relief he was seeking" in finding that plaintiff had sufficiently exhausted his administrative remedies); Morton v. Hall, 455 F. Supp. 2d 1066, 1074-75 (C.D. Cal. 2006)(finding plaintiff had failed to exhaust his administrative remedies with regard to his

assault claim, noting that the inmate appeals
coordinator had determined that plaintiff's appeal form
had only been related to an alleged denial of
visitation rights, and not the assault claim).  In
addition, the appeal records submitted by Defendant
establish that at the various stages of appeal,
Plaintiff kept grieving about his lack of medical
treatment and repeated his request for x-rays and a
different bunk or cell assignment. [Decl. Arentz, Ex.
C., p. 92-95.]  As such, the Court finds that the
appeal forms do not "contend that Defendant[] [was]
deliberately indifferent to [his] safety," nor do they
set forth facts or details regarding any impropriety on
part of Defendant that would put the prison officials
on notice as to the type of claim that is now being
asserted against Defendant in this Action. <u>Imboden v.
Hornbeak</u>, 2011 WL 590457, at *1 (E.D. Cal. Feb. 10,
2011)(finding plaintiff had failed to exhaust her
administrative remedies because her appeals stated
nothing about the defendants' alleged improper conduct
in failing to protect her from an attack).

The Court finds <u>Morton v. Hall</u> persuasive here.  In
<u>Morton</u>, the Ninth Circuit upheld the district court's
finding that the plaintiff prisoner had failed to
exhaust his administrative remedies with respect to his
Section 1983 assault claim. 599 F.3d 942, 945 (9th Cir.
2010).  The plaintiff had argued he had exhausted his
remedies by virtue of exhausting his challenge to the

prison's decision to deny him visitation with minors, arguing that the denial of visitation arose out of the same facts and circumstances as the Section 1983 assault claim. Id.  However, the Ninth Circuit found that the "Form 602 [Plaintiff] filed relating to the visitation restriction does not even mention the assault or theorize that the visitation restriction imposed was related to the assault," and therefore was insufficient to put prison officials on notice of the plaintiff's complaint that prison-staff conduct contributed to his assault. Id. at 946.

Here, as noted above, the Court finds that Plaintiff's two appeal forms focus on the fact that Defendant received inadequate medical attention after his fall and his request for medical treatment and a different housing assignment, and fail to mention wrongdoing or any deliberate indifference to his disabilities on part of Defendant in the fact that his door was opened and he was permitting to leave his cell unescorted.  As such, like the grievance at issue in Morton, the Court finds the forms here insufficient to put Prison officials on notice of Plaintiff's complaint against Defendant for deliberate indifference of his Eighth Amendment rights.

Plaintiff argues that the contents of the appeal forms combined with the circumstances surrounding his fall at the time were sufficient to put the Prison on notice of Plaintiff's claim against Defendant in this

1  Action.   Specifically, Plaintiff argues that the

2  substance of his Section 1983 claim against Defendant

3  was apparent based on the appeal language, the fact

4  Defendant was the control booth officer at the time,

5  the fact that Plaintiff suffered from a vision

6  impairment and wore a vision impairment vest and also

7  because the prison was on a lockdown at the time.

8      The Court finds this argument unpersuasive, as

9  Plaintiff fails to show that the Prison would have been

10 on notice here based on the contents of the form and

11 the surrounding circumstances at the time of the fall.

12 First, Defendant puts forth deposition testimony

13 establishing that while a control booth officer was

14 responsible for the overall safety and for controlling

15 the movement of the inmates, Defendant would not have

16 been solely responsible for determining whether to open

17 Plaintiff's cell door and when he required an escort to

18 be moved out of his cell.[11]   Therefore, the Court finds

19 that the fact Defendant was the control booth officer

20 at the time of the fall does not establish that the

21 Prison would have been on notice of this claim against

22 Defendant based on the statement in the form that his

23

24 _____

25     [11] Specifically, Defendant testified in her deposition that
   she was only supposed to open the door when instructed to do so,
26 and both Defendant and Calvin Campbell, III, a sergeant at the
   Prison who was familiar with the role of a control booth officer,
27 testified in their depositions that a control booth officer was
   not responsible for determining whether an inmate could safely
28 move from his cell to the infirmary, with or without an escort.
   [Decl. Arentz, Ex. B, p. 56:9-19, 56; Ex. D, p. 111.]

1   cell door was opened. See Porter v. Howard, 2011 WL

2   3298885, at *4 (S.D. Cal. June 14, 2011).

3       Plaintiff also argues that the contents of the

4   appeal form were sufficient to put Prison officials on

5   notice of the harm being grieved against Defendant

6   here, as Prison officials would have been on notice of

7   Defendant's wrongdoing based on the fact that Plaintiff

8   was permitted to leave his cell unescorted, during a

9   lockdown, despite the fact that he was wearing a vision

10  impairment vest.  However, the Court finds this

11  argument unpersuasive.  First, the Court finds that the

12  mere fact Plaintiff was permitted to leave his cell

13  unescorted the day of his fall would not put Prison

14  officials on notice of potential wrongdoing on part of

15  Defendant.  Specifically, Defendant puts forth evidence

16  establishing that the Prison was on a modified

17  lockdown[12] at the time of the fall, and therefore the

18  escort of prisoners without handcuffs was permitted at

19  this time and some movement was allowed.[13] [Decl.

20

21          [12] Plaintiff attempts to establish that at the time of the
22  fall, the Prison was in a lockdown that required Plaintiff's
     movement to be facilitated by an escort and with handcuffs at all
23  times.  However, the Court finds this argument unpersuasive, as
     the sole evidence offered by Plaintiff in support of this
24  argument is Plaintiff's own testimony, which the Court finds
     inadmissible on the basis of lack of foundation and personal
25  knowledge.

26          [13] The Court also finds that the evidence establishes that
27  during a modified lockdown, an escort was not required to meet
     the inmate at his cell door and escort him from there, and that
28  generally an escort would meet an inmate at the front door of the
     housing unit. [Decl. Arentz, Ex. B at 55.]

Arentz, Ex. B, p. 42, 44-45, 51-52, 60-61; Ex. D, p.
112-13.]  As such, contrary to Plaintiff's argument
here, Plaintiff's movement was not required to be
facilitated by an escort and with handcuffs at all
times during the day of the fall. Therefore, the Court
finds that Prison officials would not have been on
notice of Defendant's alleged wrongdoing here based on
the fact that Plaintiff stated in his form that he was
let out of his cell.  Moreover, the Court finds that
Plaintiff fails to establish that his vision impairment
would have put the Prison on notice of Defendant's
alleged deliberate indifference here based on the fact
he stated in the form that his cell door was opened.
Specifically, both Defendant and Calvin Campbell, III
testified in their depositions that the Prison's escort
procedures did not change for an inmate that was
disabled or had a vision impairment vest, and therefore
the evidence indicates that Plaintiff was not required
to be escorted in handcuffs at all times during the
time of the fall. [Decl. Arentz, Ex. B, p. 49:15-25;
Ex. D, p. 123:7-17, 125:3-7.]  Therefore, the Court
finds that Plaintiff fails to establish that the
circumstances at the time of the fall, combined with
the contents of the form, were sufficient to put Prison
officials on notice of the nature of Plaintiff's claim
against Defendant in this Action.

     Moreover, the Court finds that these alleged
circumstances do not change the fact that the appeal

forms themselves make no reference to a claim against a
control booth officer or Prison official for wrongdoing
stemming from the fact Plaintiff was let out of his
cell unescorted, nor do the forms mention that an
officer knew of his disability and deliberately let him
leave the cell unescorted, resulting in his fall.  The
forms simply state that Plaintiff's door was opened and
that he left the cell.  As such, the Court finds that
Plaintiff's grievances fail to set forth sufficient
facts and description here to put the Prison on notice
of the wrongs for which redress is sought in this
Action. See Johnson v. Woodford, 2010 WL 4007308, at *4
(C.D. Cal. April 20, 2010)(finding the prisoner had
failed to exhaust his administrative remedies because
his appeal was silent to facts underlying his
deliberate indifference claim).

Therefore, the Court finds that Defendant has met
her burden to establish that Plaintiff failed to
properly exhaust his administrative remedies with
respect to his Section 1983 Claim against Defendant.

When the district court "concludes that the
prisoner has not exhausted nonjudicial remedies, the
proper remedy is dismissal of the claim without
prejudice." Wyatt, 315 F.3d at 1120 (citing Ritza v.
Int'l Longshoremen's & Warehousemen's Union, 837 F.2d
at 368, n. 3 (9th Cir. 1988)).  However, the Court may
exercise its discretion and deny leave to amend when it
is clear that the plaintiff cannot allege any set of

1  facts that would entitle him or her to relief. <u>Neitzke</u>
2  <u>v. Williams</u>, 490 U.S. 319, 327 (1989).

3      The Court finds that dismissal without prejudice
4  would be futile because Plaintiff would not be able to
5  cure the defect present here based on his failure to
6  properly exhaust administrative remedies. <u>See, e.g.</u>,
7  <u>Pough v. Grannis</u>, 2011 U.S. Dist. LEXIS 32514, at
8  *23-24 (S.D. Cal. Jan. 6, 2010) (finding that because
9  plaintiff can no longer timely exhaust administrative
10 remedies the action must be dismissed with prejudice);
11 <u>Coleman v. Cook</u>, 2009 WL 3109741 at *6-7 (C.D. Cal.
12 2009)(same); <u>Stutzman</u>, 2009 WL 2901634 at *4 (same).
13 As such, Plaintiff's 42 U.S.C. § 1983 claim against
14 Defendant is **DISMISSED with prejudice** for failure to
15 properly exhaust administrative remedies**.** <u>See</u> <u>Coleman</u>,
16 2009 WL 3109741 at *6-7.

17 **IV. CONCLUSION**

18     For the reasons stated above, the Court **GRANTS**
19 Defendant leave to amend her Answer to the Second
20 Amended Complaint.  Moreover, the Court finds that
21 Defendant has met her burden to establish that
22 Plaintiff failed to properly exhaust his administrative
23 remedies with respect to his 42 U.S.C. § 1983 Claim
24 against Defendant.
25 ///
26 ///
27 ///
28 ///

1       As such, the Court **DISMISSES with prejudice**
2  Plaintiff's 42 U.S.C. § 1983 claim against Defendant.

3

4  DATED: August 30, 2011
5  **IT IS SO ORDERED.**

6

7                          RONALD S.W. LEW
8                      **HONORABLE RONALD S.W. LEW**
9                      Senior, U.S. District Court Judge